**ROCK TOURS, LTD., A Michigan Corporation et al., Plaintiffs,**

v.

**Various John DOES, Jane Does et al., Defendants.**

**Civ. A. No. 81–C–0074–S.**

United States District Court, N. D. Alabama, S. D.

Jan. 26, 1981.

Rodney A. Max, Birmingham, Ala., for plaintiffs.

Paul A. Cooperstein, pro haec vice, Cambridge, Mass., for defendants.

## MEMORANDUM OF OPINION DENYING TEMPORARY INJUNCTIVE RELIEF

CLEMON, District Judge.

The alleged "bootlegging activities" of the "Various John Does" at rock concerts in Birmingham, Alabama and throughout the United States are herein sought to be enjoined in an *ex parte* proceeding by plaintiffs Rock Tours, Ltd and the rock group nationally and professionally known as "STYX." For the reasons set forth below, this Court must deny the relief sought by the plaintiffs.

### Procedural Background

On January 19, 1981 this action was filed in the federal district court in Birmingham, Alabama. In the complaint, plaintiffs Rock Tours, Ltd, a Michigan corporation; Tommy Shaw, John Panozzo, James Young, Dennis de Young, and Chuck Panozza, collectively and professionally known as "STYX", seek a temporary restraining order, a preliminary injunction, and an order of seizure against various unnamed individuals and corporations. As immediate relief, and with respect to a scheduled January 27, 1981 STYX concert at the Birmingham-Jefferson County Civic Center, ("Civic Center") plaintiffs seek an order enjoining the defendants from selling the alleged bootleg merchandise within a two-mile radius of the Civic Center between the hours of 4:00 P.M. and 3:00 A.M. on January 27–28, 1981; and plaintiffs further seek an order authorizing United States marshals, state and local police, local county deputy sheriffs, their attorney, and any person acting under their supervision to seize and impound any merchandise bearing the name "STYX" which the unnamed defendants may attempt to sell or hold for sale at the concert.

Plaintiffs further seek a temporary restraining order and preliminary injunction, without notice, restraining the unnamed defendants and any person acting on their behalf from:

(a) Manufacturing or selling any product using "STYX", or bearing a likeness of any of the members of the group, or anything similar or confusing thereto;

(b) Representing that any article sold by them is sponsored by or authorized by plaintiff or the musical ensemble professionally known as "STYX";

(c) Selling their imitation "STYX" merchandise within a two (2) mile radius of the confines of Jefferson Memorial Civic Center, Birmingham, Alabama, during the period of 4:00 P.M. on January 27, 1981, until 3:00 A.M. on January 28, 1981, before during and after the concert on the evening of January 27, 1981.

On January 19, 1981 the Court conferred with plaintiffs' local counsel concerning the application for temporary injunctive relief; a further conference was held on January 20; and on January 22 the motion was deemed submitted to the Court on plaintiffs' affidavits.

### Plaintiffs' Causes of Action

Plaintiffs' basic complaint is that the unnamed defendants will, at the January 27 Civic Center Concert and at similar concerts throughout the country, attempt to sell imitation, inferior and unlicensed merchandise bearing the service mark "STYX" or likenesses of the individual plaintiffs, without

the authorization of plaintiffs.[1] Predicating their causes of action on the Lanham Act, (15 U.S.C. § 1125), the Federal Copyright Act (17 U.S.C. § 501 et seq.),[2] and what is presumably the Alabama common law of unfair competition and misappropriation of the right of publicity, plaintiffs claim damages arising out of loss of business reputation and goodwill, as well as loss of sales and profits. These damages are asserted to be impossible of monetary ascertainment; and it is alleged that only injunctive relief is appropriate.

### The Birmingham City Ordinance

The City of Birmingham is not unfamiliar with the problems posed by unlicensed vendors selling unauthorized or "bootleg" merchandise at various functions held at the Civic Center. It has, in response thereto, adopted an ordinance which provides, in relevant part:

> "It shall be unlawful for any person, while upon the public streets or sidewalks within the loop area, ... or within any area within one-half (½) mile of such loop area, to sell or offer for sale any emblem, pennant, or any goods or personal property of any character whatsoever...."
> § 12–14–4 *Birmingham City Code* (Ord.No. 77–109).

The Civic Center is judicially noticed to be comfortably within a half mile of the "loop area", as defined by the ordinance. The "loop area" is the downtown area; and as Chief of Security of the Civic Center points out, the ordinance was enacted "for the purpose of prohibiting this sale of [unauthorized] merchandise outside the area of the Civic Center." Authorized merchandise, such as that marketed by the corporate plaintiff, is sold within the Civic Center Building through a concessionaire, Interstate United.

Since the enactment of the ordinance, bootlegging activities at the Civic Center have been curtailed, and the Civic Center's Security staff is prepared to "... look out for bootleggers and take appropriate action under the law." Of course, Birmingham policemen who regularly patrol the Civic Center area and others who are specially assigned to it during rock concerts may arrest any person violating the ordinance in their presence.

### The Justiciability Of The Controversy

In this *ex parte* proceeding, this Court is necessarily concerned with the extent, if any, to which the instant action is justiciable. Is there a "case or controversy" within the reach of Article III of the federal Constitution; and, if so, should the Court nonetheless exercise its authority or discretion under the Article?

Direction to this Court is provided by the United States Supreme Court in *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) in which the Chief Justice noted that

> the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.' As is so often the situation in constitutional adjudication, the two words have an iceberg quality, containing beneath their surface simplicity submerged complexities which go to the very heart of our constitutional form of government. Embodied in the words 'cases' and 'controversies' are two complementary but somewhat different limitations. In part, *those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government.* Justiciability is the term of

---

**1.** Plaintiff Rock Tours, Ltd has been granted by the other plaintiffs the exclusive right to affix the service mark "STYX" to items of personal property (such as articles of clothing, jewelry, photographs and posters) and to market such property, wholesale and retail.

**2.** The service mark "STYX" is not registered with the United States Patent and Trademark Office. It is a registered trademark and service mark under Illinois law.

No copyright has been issued to the plaintiffs.

art employed to give expression to this dual limitation placed upon the federal courts by the case-and-controversy doctrine.

\* \* \* \* \* \*

Additional uncertainty exists in the doctrine of justifiability because that doctrine has become a blend of constitutional requirements and policy considerations." 392 U.S. 94–97, 88 S.Ct. 1949–1951. (emphasis added).

At this point, plaintiffs have no adversaries in this Court. This proceeding has been wholly *ex parte*. Although the lack of actual defendants has apparently not posed an insurmountable barrier to preliminary injunctive relief in at least sixteen similar federal district court cases,[3] this Court is not so sanguine in an *ex parte* proceeding. While plaintiffs take comfort in the fact that in those cases, there is usually no challenge to the *ex parte* relief granted by the Courts;[4] in this Court's view, the absence of challenges may simply beg the question of whether the proceedings are truly adversary proceedings.

Indeed, for aught that appears, this Court does not have *in personam* jurisdiction over the unnamed defendants, for the complaint describes the defendants as "... generally nomadic individuals without business premises or other connections with the locality."

Under these circumstances, this Court doubts "... the existence of a sufficient adversary interest to stimulate the parties to a full presentation of the facts and arguments, which in our adversary system is available only from the parties." Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction § 3530, 164–165. At this time, the instant action is not a justiciable one for purposes of *ex parte* injunctive relief.[5]

Moreover, policy considerations would mitigate against the granting of kind of temporary injunctive relief herein sought by plaintiffs. Basically, plaintiffs seek through this Court a mechanism under which to seize and impound the allegedly bootleg merchandise to be sold by the unnamed defendants. Counsel for plaintiffs have emphasized that the likelihood of a trial on the merits of the Lanham Act claim[6] is small, if at all. Significantly, plaintiffs do not specifically seek any monetary damages in their prayer for relief.

It would appear, therefore that this controversy is one which may be more appropriately addressed to the legislative or executive branches. Consistent with this observation, the City of Birmingham has already adopted an ordinance to proscribe the very kind of activities sought to be enjoined herein; and the evidence before the Court is that the ordinance is being vigorously enforced.

---

**3.** *Joel v. Various John Does, et al* 499 F.Supp. 791 (E.D.Wis.); *Tommy Shaw, et al v. Various John Does*, (No. 80–CW–722–LWP S.D.N.Y.); *Billy Joel v. Various John Does*, (No. 80–CW–3411–RTW S.D.N.Y.); *Frank Zappa, et al v. Various John Does*, (No. 80–CW–6120 RLC, S.D.N.Y.); *Neil Peart et al v. Various John Does* (No. 80–CW–1389 CPS); *Root Beer Rags, LTD. v. Various John Does* (No. 80–CV–1998 CPS); *Billy Joel et al v. Various John Does* (No. 80–0259, D.R.I.); *Alex Van Halen, et al v. Various John Does* (No. 80–905–CW–T–H, M.D. Fla.); *Winterland Productions v. John Doe, et al* (No. 80–2283, D.Mass.); *Winterland Concessions et al v. Various John Does*, (No. 80–CW–192–D.Conn.); *Tommy Shaw et al v. Various John Does* (No. 80–CW–722 LWP, S.D.N.Y.); *Alex Van Halen v. Various John Does* (No. CV 80–1341, W.D.La.); *George Alper et al v. Various John Does* (No. CV 80–2938); *Billy Joel et al v. Various John Does* (No. 80–Civ–3411 RJW, S.D.N.Y.); *Robert Halford et al v. Various John Does* (No. 80–CW–3801, S.D.N.Y.);

*Visual Artists and Galleries Assn. v. Various John Does*, (No. 80–CW–4487, S.D.N.Y.).

**4.** See Affidavit of Paul A. Cooperstein, paragraph 20.

**5.** Plaintiffs are free, of course, to amend their complaint to add specific individuals and/or organizations as parties-defendants. At that point, the requisite adversarial nature of the proceeding can be reconsidered by the Court.

**6.** Without pre-judging the other claims, suffice it to note that the copyright claim is at least open to question since plaintiffs do not have a copyright, *Amberg v. File and Index Co. v. Shea Smith and Co.*, 78 Federal 479 (C.C.Ill., 1896); equally open to question is the existence, under Alabama common law, of a cause of action for unfair competition and misappropriation of the right of publicity.

## CONCLUSION

For the reasons stated herein, plaintiffs' application for a temporary restraining order and a preliminary injunction will be DENIED.