NATIONAL FOOTBALL LEAGUE PROPERTIES, INC., Plaintiff,

v.

John CONIGLIO, Hamden Screenprints, Colleen Fox, and Various John Does and Jane Does, and ABC Companies, Defendants.

Civ. No. 83–210.

United States District Court, District of Columbia.

Jan. 27, 1983.

Lawrence Lucchino, Lon S. Babby, of Williams & Connolly, Washington, D.C., Christopher C. Larkin, of Townley & Updike, New York City, for plaintiffs.

No appearance for defendants.

## ORDER

CHARLES R. RICHEY, District Judge.

Before the Court is an application by plaintiff, National Football League Properties, Inc., for a temporary restraining order. Plaintiff seeks to enjoin the distribution, in the District of Columbia, of unlicensed souvenir merchandise bearing several of plaintiff's registered trademarks. Toward that end, plaintiff seeks an order from this Court authorizing the United States Marshall or any "duly-authorized security representative of plaintiff" to traverse the streets of Washington and to physically seize and impound any such merchandise manufactured, distributed, advertised, offered for sale, or sold in the District, and to hold the seized goods in the custody of plaintiff's counsel for ultimate presentation, by the bagload, to the chambers of this Court. Plaintiff seeks such an order without notice to any defendant, and before it has even effected service of its complaint on all defendants. Indeed, plaintiff has not even *identified* all of the potentially numerous defendants to whom this sweeping order would apply other than by the designation "Various John Does and Jane Does, and ABC Companies."

Even on the surface, the order requested by plaintiff would appear to invite catastrophe. It promises a nightmare of jurisdictional flaws, deprivations of due process, and windfall litigation that could ensue for years to come. This is not even to mention the physical spectacle of the United States Marshall Service, which is already greatly overburdened in its work, in the company of paid thugs (euphemistically styled "security representatives") roaming the streets of Washington to confiscate the merchandise of small businessmen and other licensed vendors who sell their wares in the open air. In short, the relief plaintiff seeks would open a veritable Pandora's box of problems that this Court cannot even begin to imagine now.

Measuring plaintiff's request by the well-established standards for preliminary injunctive relief, it clearly must fail. As set forth in *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C.Cir.1977), the relevant considerations are:

1. The likelihood that plaintiff will prevail on the merits;

2. The threat of irreparable injury to plaintiff if no injunction is issued;

3. The degree of harm that the issuance of an injunction would cause to defendant and other parties interested in the proceedings; and

4. The public interest.

With respect to the first consideration—demonstrating the likelihood of success on the merits—plaintiff here has pointed to particular unauthorized merchandise purchased from the three named defendants which it alleges is likely to cause confusion as to its source, sponsorship, or origin. Plaintiff has not, however, and cannot demonstrate that it is likely to prevail with respect to the merchandise of the defendants whom it has not yet even named, nor certainly with respect to the *authorized* merchandise of defendants that might readily be seized in a wholesale confiscation of property.

Second, plaintiff has attempted to demonstrate the infliction of irreparable injury merely from the allegation of infringement. For support, it cites the decision of another jurisdiction that plainly is not binding on this Court. *See In re Vuitton Et Fils, S.A.,* 606 F.2d 1 (2d Cir.1979). Contrary to that decision, it appears to this Court that the injury plaintiff has alleged here definitely is not reparable *only* by means of a TRO. By plaintiff's own contention, once notice of this lawsuit is given to one infringer, word will spread immediately to others, who will thereupon disappear, and merchandise will be concealed, shipments will be halted, and goods will be transported out of the jurisdiction. It seems to the Court that this is precisely the result that plaintiff is seeking here through a restraining order, and it can be accomplished merely by service of a complaint. In the alternative, if plaintiff prefers to make an example of the "professional infringers" and "vendors of 'bootleg' merchandise" that it alleges have flooded the streets of Washington, it can allow them to prosper, continue to gather information about their activities (using the elaborate system of investigators and "Knockoff Report Forms" that plaintiff proudly describes in its papers, and which it evidently used at the last Super Bowl), and then retroactively sue for the profits earned. In other words, the injury plaintiff has claimed is, by its own statements, clearly not irreparable.

Even assuming, *arguendo,* that plaintiff has shown irreparable injury and the likelihood of success on the merits, the third and fourth considerations for preliminary injunctive relief strongly vitiate against plaintiff. The harm that may come to the defendants and "other parties interested in the proceedings" from the issuance of the order requested by plaintiffs is potentially enormous. As already noted, the order would burden the already overworked Marshall's Service, which would be sent scuttling through Washington as messenger for the NFL. The order would open small businesses and street vendors throughout the city to the threat of forcible confiscation, which, when implemented, could result in the taking of legitimate and authorized merchandise at the time when it was most marketable. It could also result in physical outbreaks and other substantial disruptions of the city's commerce, completely contrary to the "public interest." Surely plaintiff must jest when it contends that all of this would be a "minimal inconvenience" to defendants and would serve to "aid the efforts of the Police Department of the District of Columbia to exercise crowd control." If anything, it would cause great *inconvenience* and increase public disruptions at some of the District's busiest interchanges.

For all of the foregoing reasons, it is, by the Court, this 27th day of January, 1983,

ORDERED, that plaintiff's application for a temporary restraining order should be, and hereby is, denied, and it is

FURTHER ORDERED, that a hearing on the requested preliminary injunction shall be held only after service is effected on all defendants and the defendants have submitted responsive pleadings.