Robert A. PLANT p/k/a Robert Plant, James C. Page p/k/a Jimmy Page, P & P Touring, Inc. and Big Tours, Inc., Plaintiffs,

v.

Various John DOES, Jane Does, and ABC Companies, Defendants.

No. 98–1137–CIV.

United States District Court, S.D. Florida.

May 27, 1998.

Kenneth Feinswog, Los Angeles, CA, Gary Stiphany, Elio F. Martinez, Jr., Lucio Mandler Croland Bronstein et al., Miami, FL, for Plaintiffs.

*ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER AND DISMISSING CASE*

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Plaintiffs' Ex Parte Emergency Motion for Order to Show Cause on Motion for Preliminary Injunction with Temporary Restraining Order ("TRO") and Order of Seizure, filed May 21, 1998. Defendants, as they are unknown and have not been served, were unable to file a response. The Court entertained oral argument from Plaintiffs' counsel on May 21, 1998. At the conclusion of the TRO hearing, the Court announced its decision denying Plaintiff's motion and dismissing the case in open court. The day following the Court's announcement of its ruling, Plaintiff sought and obtained a TRO from the U.S. District Court for the Middle District of Florida, prohibiting unnamed parties from selling souvenir merchandise in Florida, South Carolina, and North Carolina.

*Factual Background*

Plaintiffs are rock musicians and the companies licensed to sell their souvenir merchandise. Plaintiffs Plant and Page, former members of the rock and roll band Led Zeppelin, are currently on a nationwide music tour. As well as owning the intellectual property rights to their own names and likenesses, Plant and Page are co-owners of the Led Zeppelin trademark. Plaintiffs seek a nationwide injunction directed at as yet unknown "bootleggers" who sell t-shirts and souvenir items bearing Plant and Page likenesses or the Led Zeppelin logo. Plaintiffs ask this Court to authorize the U.S. Marshal or other law enforcement authorities to seize and impound any apparently infringing merchandise sold within a twenty-five mile radius of Page/Plant concerts.

This "emergency" motion was filed on Thursday, March 21, 1998, at 10:16 a.m. Plaintiffs' counsel requested that the motion be ruled upon that same day because the Page/Plant concert was scheduled for Friday, March 22, 1998. The Court duly scheduled oral argument for 1:15 p.m. The Motion, Complaint, and supporting legal memorandum and exhibits total 297 pages.

*Discussion*

■ Initially, the Court must express its serious displeasure with the method in which Plaintiffs and Plaintiffs' counsel chose to litigate this case. First, Plaintiffs elected to file their case the day before the concert date, creating an artificial air of emergency. Plaintiffs' counsel indicated at oral argument that Plaintiffs had known of their plans to perform in Miami for months, and Plaintiffs' counsel had been retained for the purposes of filing this case weeks before the case was filed. Nonetheless, Plaintiffs expected this Court to read all 297 pages of documentation, entertain oral argument, and sign their proposed show cause order in a matter of hours. These time restraints made it unlikely that the Court would have time to conduct legal research to determine if any published cases addressed the various problems presented when a private plaintiff petitions a court ex parte to engage the police powers of the U.S. government against unknown and unidentified individuals. In a similar published rock

concert bootleg case, which incidentally was not cited by Plaintiffs, the district court expressed comparable disapproval of the plaintiff's attorney's tactics:

> I am somewhat disturbed about the timing of the plaintiff's request. The suit was filed on December 1, and the concert is scheduled for December 7. The short time between the two events contributed to an aura of emergency to this proceeding that should not have been necessary.... The [musical group] and its souvenir hawkers knew they were going to be here over two months ago. They could have filed their lawsuit at that time and requested an orderly placement on the calendar a week or two in advance of the concert date.

*Brockum Int'l, Inc. v. Various John Does*, 551 F.Supp. 1054, 1055 (E.D.Wis.1982). This Court will not countenance the practice of filing eleventh hour motions in the hopes that the Court will not have time to come to a reasonable and just legal decision and will be forced to hastily sign a proposed order in an effort to reach an expedited disposition.

Moreover, given the fact that Plaintiffs deliberately created their own "emergency" situation and given the fact that the unnamed and unserved Defendants could not possibly come to Court and defend the adverse position, one would think that Plaintiffs' counsel would be especially vigilant about presenting a full, fair, and accurate picture of the state of the law governing the case. Unfortunately, it appears that Plaintiffs did just the opposite. Perhaps believing that the Court would not have enough time to do its own research, Plaintiffs failed to cite any of the published cases on these rock concert bootleg injunctions. The Court found four published cases and an ALR report addressing the subject of the propriety of enjoining unidentified bootleggers at rock concerts. *See Brockum Co. v. Various John Does*, 685 F.Supp.

476 (E.D.Penn.1988); *Brockum Int'l, Inc.*, 551 F.Supp. at 1054; *Rock Tours, Ltd. v. Various John Does*, 507 F.Supp. 63 (D.Ala. 1981); *Joel v. Various John Does*, 499 F.Supp. 791 (E.D.Wis.1980); *Trademark Protection Under Lanham Act of Name of Musical Group*, 1993 WL 837850, 115 A.L.R.Fed. 171 (1993).

While only some of the cases are adverse to Plaintiffs' position and the issue of the propriety of these types of injunctions may be characterized as fairly debatable, Plaintiffs attempted to lead the Court to believe that no debate existed at all. Before even reading the published case law on the issue, it appeared to this Court that obtaining an ex parte injunction against unknown individuals who had not yet engaged in any actionable conduct posed serious jurisdictional and justiciability problems. Plaintiffs' brief does not address the critical issues of jurisdiction or justiciability or attempt in any way to argue through reason and precedent that this Court has jurisdiction and that Plaintiffs' action involves a "case or controversy." Rather, Plaintiffs have skirted the issues and directed the Court's attention only to unpublished seizure orders that fail to discuss either justiciability or jurisdiction.[1]

When the Court read the relevant published cases, its instincts were confirmed: Several raise the serious jurisdictional and justiciability problems inherent in issuing an injunction of this type. *See, e.g., Brockum, Co.*, 685 F.Supp. at 478 (expressing concern "because in personam jurisdiction was unclear and the proceeding lacked the requisite adversary interest"); *Rock Tours, Ltd.*, 507 F.Supp. at 65 ("[T]his Court is necessarily concerned with the extent, if any, to which the instant action is justiciable"); *Joel*, 499 F.Supp. at 792 ("[T]roubling, however, is the propriety of the remedy sought

---

**1.** One of the unpublished cases attached to Plaintiffs' counsel's affidavit briefly discusses whether a plaintiff may sue a defendant with a fictitious name. The court, relying on the authority of *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), concludes that "[i]t is axiomatic that suits are maintainable against fictitious parties whose names are not yet known to the plaintiff." *Great Southern Co. Inc. v. John*

*Doe*, Case No. C 82–294, at 3 (N.D.Ohio May 1, 1984). This Court finds, however, that the use of fictitious names in cases involving defendants who exist and have already engaged in illegal behavior, but whose names are not readily available to the plaintiffs, is completely distinguishable from the case at bar in which Plaintiffs are attempting to secure preemptive relief against parties who, as yet, have not engaged in any actionable behavior, nor even necessarily exist.

by the plaintiffs insofar as it requires the court to enjoin the activities of persons whose identities are unknown at this time."). Plaintiffs' counsel's failure to fairly apprise the Court of all the issues is particularly disturbing in light of the fact that the unnamed Defendants could not possibly respond to Plaintiffs' memorandum. The court in *Brockum Co.* denounced similar behavior by the plaintiff's attorney, stating:

> Counsel also denied knowledge of two decisions ... in which district court judges expressed serious concerns as to concert tour bootleg merchandise injunction actions.... In plaintiff's 21-page memorandum, nine districts are reported to have granted the relief requested. No arguments, reasons, concerns or authority to the contrary are noted....
>
> [P]articularly ... in an ex parte proceeding ... counsel must be vigilant in discharging their duties as officers of the court, including articulating correct statements of the law, disclosing adverse authority, and avoiding misuse of court orders.

685 F.Supp. at 477 & n. 2 (citations omitted).

In the case at bar, not only did Plaintiffs fail to disclose any adverse authority, but they also suggest in their brief that granting the requested relief is routine, stating that "[d]istrict courts now grant what are generally referred to as national seizure orders." (Pls.' Mem. at 15). Plaintiffs go so far as to imply that the unknown Defendants chose not to challenge this action, stating that they are "loath to appear." *Id.* at 16.

 At oral argument, the Court asked Plaintiffs' counsel whether he knew of any cases denying injunctions of this type, and if so, why he did not disclose them. Counsel responded that three judges of the Southern District of Florida had granted such injunctions, but that he had "heard" from a lawyer friend that there may have been such a case denying injunctive relief. He emphasized, however, that he had never personally been denied such an injunction and could not direct the Court's attention to a single case in which such an injunction was denied. Plaintiffs' counsel thus contended that he was not obligated to disclose the adverse authority because he was not personally involved in those adverse cases. This Court's humble understanding of the ethical obligation of attorneys, however, is that they must disclose adverse case authority whether or not they are personally involved in the adverse cases. Otherwise, the majority of attorneys would be exempt from the requirement of citing the relevant Supreme Court case law on a given legal issue. While the Court can certainly understand an attorney's desire to reach a resolution most favorable to his client, higher than the requirements of zealous advocacy are the obligations of truth, honesty, and ethical virtue. As Justice Stevens observed in *Mallard v. U.S. Dist. Ct. for the So. Dist. of Iowa*, 490 U.S. 296, 310, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989) (Stevens, J., dissenting):

> 'Membership in the bar is a privilege burdened with conditions.' The [lawyer] was received into that ancient fellowship for something more than private gain. He became an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice.

(quoting Justice Cardozo in *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 162 N.E. 487, 489 (N.Y.1928)).

 That being said, the Court will turn to whether the law permits Plaintiffs to obtain ex parte equitable relief to prevent unknown parties from engaging in what might be illegal behavior in the future. Although other courts have granted such relief, this Court is convinced that doing so would neither comport with federal procedural rules nor the dictates of justice. First, Plaintiffs have not made a sufficient showing that the Court has personal jurisdiction over the unknown Defendants. Plaintiffs have not served Defendants with process, and have elected not to do so until Defendants' property has already been seized. The Court initially notes that although plaintiffs are permitted to use fictitious names in their complaints, see *Bivens*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619, "federal courts do not favor the naming of 'John Doe' defendants." *Joel*, 499 F.Supp. at 792 (citing *Fifty Assoc. v. Prudential Ins. Co.*, 446 F.2d 1187 (9th Cir.1970)). In addition, "a district

court does not have jurisdiction over unnamed defendants unless they have been served with a summons and a copy of the complaint." *Wood v. Worachek,* 437 F.Supp. 107, 110 (E.D.Wis.1977) (citing *United States ex rel. Lee v. People of the State of Illinois,* 343 F.2d 120 (7th Cir.1965)). Courts generally permit the use of fictitious names when the only way a plaintiff can obtain the name of a defendant who has harmed him is through the discovery process in a case filed against that defendant as an unnamed party. *See Rodriguez v. City of Passaic,* 730 F.Supp. 1314, 1319 n. 7 (D.N.J.1990) ("Where a complaint asserting claims against 'John Doe' defendants has not been amended to substitute defendants who are real parties in interest as soon as the identity is known or reasonably should have been known, or, in any event before the close of discovery, such an assertion is mere surplusage and will be disregarded by the court."). The use of a fictitious name is not generally permitted as a tool by which a private plaintiff may obtain a broad-based order preventing any and all members of society from engaging in future behavior that might or might not later be found to have violated the plaintiff's rights.

█ Moreover, in order to survive dismissal for lack of jurisdiction, Plaintiffs must "demonstrate[ ] that they have engaged in a reasonably diligent search to identify the unknown defendants [and] ... inform[ ] the Court of any efforts they have taken to provide these individuals with constructive notice." *Boyd v. Arizona State Bd. of Dental Examiners,* Case No. Civ. A. 88–1560–MA, 1989 WL 37309, at *12 (D.Mass. Apr.4, 1989). Furthermore, the requirement that "unknown parties have at least constructive notice is no dispensable formality; rather, it is an essential element of due process without which a court has no jurisdiction to bind the absent parties." *Friedman v. New York City Dep't of Hous. & Dev. Admin.,* 688 F.Supp. 896, 901 (S.D.N.Y.1988).

Plaintiffs simply assert that the use of a fictitious name is proper because "[s]aid parties cannot be identified until they actually appear at said concerts." (Pls. Em. Ex Parte Mot. for Ord. to Show Cause, at 2). In the very same paragraph, however, Plaintiffs

state that, unless enjoined, these individuals will "travel[ ] on to the next concert" and sell their merchandise. This clearly indicates that the same individuals follow the band from concert to concert, selling their wares. Plaintiffs give no explanation as to why they are unable to obtain the identities of these individuals. Indeed, Plaintiffs do not indicate that they have even ever attempted to ascertain the identity of these individuals. This Court declines to suspend time-honored procedural rules simply because Plaintiffs did not wish to expend a modest amount of their ample resources to do a routine preliminary factual investigation before bringing suit in this federal Court. *See Glaros v. Perse,* 628 F.2d 679, 685 (1st Cir.1980) ("[T]he district court [is not] obliged to wait indefinitely for [plaintiff] to take steps to identify and serve the 'unknown' defendants."). Given the considerations discussed above, courts have concluded that they lack personal jurisdiction over these unknown bootleggers. *See Rock Tours, Ltd.,* 507 F.Supp. at 66 ("Indeed, for aught that appears, this Court does not have in personam jurisdiction over the unnamed defendants."); *Brockum Co.,* 685 F.Supp. at 477 ("[T]he necessary predicates for enjoining such persons, whoever and wherever they may be, is in personam jurisdiction and venue, neither of which have been adequately established by a competent showing in this action."); *cf. Joel,* 499 F.Supp. at 792 (granting limited TRO but observing that "[a] court does not have the power to order injunctive relief against a person over whom the court has not [acquired] in personam jurisdiction. A court does not have the power to enjoin the behavior of the world at large.").

In addition, Plaintiffs' case must fail for lack of justiciability. As the Second Circuit observed in *Heldman v. Sobol,* 962 F.2d 148, 153–54 (2d Cir.1992):

> Federal courts may decide only actual cases and controversies. *See* U.S. Const. art. III, § 2. The parameters of the case or controversy limitation emerge from the cluster of justiciability doctrines—doctrines that incorporate concerns about the proper role of the judiciary in a democratic society and the need to assure an adversarial presentation of the issues.

(citing *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Flast v. Cohen,* 392 U.S. 83, 96–97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)). Serious justiciability problems arise from the facts that Defendants cannot possibly be here to defend their position, Defendants at this time have not committed any injurious act, and Defendants, for all the Court knows, may never have committed any similar injurious acts in the past. As Judge Clemon observed in his well-reasoned opinion in *Rock Tours, Ltd.:*

> At this point, plaintiffs have no adversaries in this Court. This proceeding has been wholly ex parte. Although the lack of actual defendants has apparently not posed an insurmountable barrier to preliminary injunctive relief in at least sixteen similar federal district court cases, this Court is not so sanguine in an ex parte proceeding. While plaintiffs take comfort in the fact that in those cases there is usually no challenge to the ex parte relief granted by the Courts; in this Court's view, the absence of challenges may simply beg the question of whether the proceedings are truly adversary proceedings....
>
> Under these circumstances, this Court doubts "... the existence of a sufficient adversary interest to stimulate the parties to a full presentation of the facts and arguments, which in our adversary system is available from the parties." At this time, the instant action is not a justiciable one for purposes of ex parte injunctive relief.

507 F.Supp. at 66 (quoting Wright, Miller, and Cooper, *Federal Practice and Procedure: Jurisdiction* § 3530, 164–65) (footnotes omitted).

■ In our uniquely American governmental system of checks and balances, courts play a necessarily limited role. They do not create the law, and they do not execute the law. Rather, courts exist solely to resolve disputes between actual parties involved in actual controversies. They may not issue advisory opinions, and they may not address contingencies or hypothetical situations. The doctrine of justiciability grows out of this recognition that the role of courts is limited. *See Flast v. Cohen,* 392 U.S. 83, 94–95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) ("[N]o justiciable controversy is presented when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action."). As the Eleventh Circuit has observed:

> Article III of the United States Constitution requires that federal courts address only "cases and controversies." The case and controversy doctrine places a dual limitation upon federal courts which is termed "justiciability." Justiciability, then, seeks to ensure that federal courts address only questions presented in an adversarial context and that the judiciary will not encroach upon the powers of other branches of government.

*Graham v. Butterworth,* 5 F.3d 496, 498–99 (11th Cir.1993) (citations omitted). The relief sought by Plaintiffs extends far beyond the powers of this one federal district Court. Plaintiffs ask this Court first to create a law authorizing the U.S. Marshal to seize on sight any merchandise that reasonably appears to the Marshal to infringe on a trademark and second to execute the law by ordering the Marshal to seize the merchandise. For this reason, Judge Clemon concluded:

> Basically, plaintiffs seek through this Court a mechanism under which to seize and impound the allegedly bootleg merchandise to be sold by the unnamed defendants ... It would appear, therefore, that this controversy is one which may be more appropriately addressed to the legislative or executive branches.

*Rock Tours, Ltd.,* 507 F.Supp. at 66.[2]

Finally, policy consideration militate against granting injunctive relief. The public

2. In addition, the Court seriously doubts that Plaintiffs have standing to pursue this case. "To qualify as a party with standing to litigate, a person must show, first and foremost, 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent.'" *Arizonans for Official English v. Arizona,* 520 U.S. 43, 117 S.Ct. 1055, 1067, 137 L.Ed.2d 170 (1997) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Plaintiffs contend that injury by the unknown Defendants is immi-

interest can hardly be served by this Court ordering armed police personnel to forcibly confiscate the merchandise of unsuspecting vendors at a rock concert where people are probably already in a rowdy mood. *See Brockum,* 685 F.Supp. at 478 ("[T]he use of plainclothes personnel to serve and enforce court orders of this type may be more conducive to violence than to discouraging bootlegging."). In sum, the hornets' nest of procedural problems and policy implications posed by this case simply prevents the Court from granting the extreme and broad based injunctive relief requested by Plaintiffs. If district courts are not rigorous in their application of Constitutional standards and enforcement of venerable procedural mandates, it is the individual citizen that bears risk of getting stung. This Court agrees with the poignant opinion in *National Football League Props., Inc. v. Coniglio,* 554 F.Supp. 1224, 1225 (D.D.C.1983):

> Plaintiff seeks a [seizure] order without notice to any defendant, and before it has even effected service of its complaint on all defendants. Indeed, plaintiff has not even identified all of the potentially numerous defendants to whom this sweeping order would apply other than by the designation "Various John Does and Jane Does, and ABC Companies." Even on the surface, the order requested by plaintiff would appear to invite catastrophe. It promises a nightmare of jurisdictional flaws, deprivations of due process, and windfall litigation that could ensue for years to come. This is not even to mention the physical spectacle of the United States Marshall Service, which is already greatly overburdened in its work, in the company of paid thugs (euphemistically styled "security representatives") roaming the streets of Washington to confiscate the merchandise of small

businessmen and other licensed vendors who sell their wares in the open air. In short, the relief plaintiff seeks would open a veritable Pandora's box of problems that this court cannot even begin to imagine now.

### Conclusion

The law should reward reason over haste and adherence to fair procedure over sweeping judicial power. The Court recognizes that bootlegging is a social problem; however, federal litigation is not a cure-all, and judicial authority may not be invoked every time a private litigant wishes to obtain a quick fix to what he perceives to be society's ailments. *See Brockum Co.,* 685 F.Supp. at 478 ("[T]he existence of an economic or societal problem does not necessarily mean that judicial power can or must deal with it."). Federal procedural rules, incorporating the principles of jurisdiction and justiciability, are not mere technicalities, and they cannot be abandoned even in the most compelling of cases. They must not be abandoned in this case. Justice will never be served in the long run by submerging the procedural doctrines which protect all litigants in all cases to one individual's wanton quest to achieve success in his particular case.

Accordingly, after careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Plaintiffs' Ex Parte Emergency Motion for Order to Show Cause on Motion for Preliminary Injunction with Temporary Restraining Order and Order of Seizure be, and the same is hereby, DENIED. It is further

---

nent. However appealing this argument may seem on the surface, when deconstructed it poses logical problems. Perhaps if Plaintiffs had identified Defendants as particular persons who had necessarily infringed in the past and had a pattern of infringing, this Court could conclude that these named defendants were likely to infringe in the future and therefore posed an imminent threat of injury to plaintiffs. Alternatively, if Plaintiffs had alleged a cause of action based on past acts of infringement by unknown defendants that Plaintiffs sought to identify later

through the discovery process, Plaintiffs would have standing by way of having suffered an "actual" injury. In this case, however, because of Defendants' status as unknown and unidentifiable, the Court has no idea whether or not such individuals have ever engaged in infringing behavior or whether they pose a threat of immediate harm to Plaintiffs. In addition, Plaintiffs do not base their Complaint on concrete incidents of past infringement but rather on speculative future incidents that may or may not occur.

ORDERED and ADJUDGED that the above-styled case be, and the same is hereby, DISMISSED without prejudice to refile with proper service to Defendants.