## COLUMBIA INSURANCE COMPANY, Plaintiff,

v.

## SEESCANDY.COM, Sees Candys, Web Service Provider, Hostmaster DNS, Fluctuate, Foolio, X2, Ticker Talk, Sidney Trayham, Peter Jackson, Robby Kumar, RL, Salu Kalu, and Ravi Kumar, Defendants.

### No. C–99–0745 DLJ.

United States District Court,
N.D. California,
Oakland Division.

March 8, 1999.

Laura L. Kulhanjian, Robert B. Chickering, Lisa Marie Schull, Flehr, Hohbach, Test, Albritton & Herbert, San Francisco, CA, for Columbia Insurance.

**ORDER**

JENSEN, District Judge.

On February 22, 1999, plaintiff Columbia Insurance Company filed an motion for a temporary restraining order and an order to show cause why a preliminary injunction should not issue. On March 4, 1999, plaintiff withdrew the motion with respect to defendants the Web Service Provider, Sidney Trayham, and Peter Jackson. The Court hereby denies the motion without prejudice to refiling and orders plaintiff to submit a brief with the Court within 14 days addressing the issue of whether the Court should authorize discovery to establish defendant's identity sufficiently such that he may be served in compliance with the Federal Rules of Civil Procedure.

**I. BACKGROUND**

A. *Factual–Background and Procedural History*

On February 22, 1999, plaintiff Columbia Insurance Company ("Columbia") filed this action seeking injunctive relief, damages, and an accounting of profits. Columbia is the assignee of various trademarks related to the operation of See's Candy Shops, Inc. ("See's"). See's is the predecessor in interest to the trademarks at issue in this case and holds a license from Columbia to use the marks.

The domain names "seescandy.com" and "seecandys.com" have been registered with Network Solutions, Inc. ("NSI") by someone other than plaintiff. On the Internet, computers find each other by reference to Internet Protocol (IP) addresses, which are a series of numbers that are used to specify the address of a particular machine connected to the Internet. Domain names are alphanumeric strings that are associated with particular IP addresses. Thus to find the computer at 129.99.135.66, a user might type in uscourts.gov, and would never need to know the actual IP address.

This two-tiered system for locating a particular place on the Internet exists for two reasons: first, alphanumeric strings, such uscourts.gov are easier to remember than, for example, 129.99.135.66; second, domain names can be reassigned to different machines simply. To change the machine with which a domain name is associated, the domain name owner need only change the records on file with the Domain Name System (DNS). The DNS is a database that links domain names to IP addresses. Thus when a user types in a domain name, a message is sent to a name server which accesses the DNS, looks up the domain name, associates it with an IP address, and takes the user to that IP address.

Domain names themselves have at least two parts, usually at least three. For example www.uscourts.gov would be typical. The last part consists of the top level domain. This is the equivalent of a neighborhood in which the domain name owner has chosen to reside. Some of the most common neighbor-

hoods are .gov, for the government, .edu, for educational institutions, .net and .com, both of which are used for commercial and personal domains, and .org, for organizations.

The next portion of the domain name, moving from right to left, is the second level domain name. This is the part of the domain name that is chosen by the domain name registrant when a domain is registered with NSI, which runs the DNS. The ownership information for any given domain name can be looked up in a public database using a "WHOIS" query. Thus in this case the offending act was the registration of seescandy and seescandys as domains within the .com top level domain space. The "WHOIS" records for these two domains reveal the following.

As of September 24, 1998, the seescandy domain name was registered to seescandy.com. The address was given only as "CA, 90706," which is for Bellflower, California. The administrative and billing contacts were listed as Salu Kalu, who could be contacted by e-mail at hostmaster@fluctuate.com. The telephone number given, 408–555–1212, is the local number for information in the San Jose area. The fluctuate.com domain, as of February 21, 1999 is registered to a Ravi Kumar of Artesia, California.

On December 22, 1998, the record was changed to show the owner as R, L of Artesia, California; however, the zip code given, 90706 is for Cerritos, California. The phone number was again given as the number for information, but the area code had been changed from 408 to 714. The contact e-mail address had been changed to RL@fluctuate.com. In addition, the domain was now shown as being hosted by websp.com.

On February 13, 1999, the record was modified again to list the address as P.O. Box 1300, Artesia, California, with the zip code changed from 90706 to 90702, which is an actual zip code for Artesia, California. The telephone number was also changed to (562) 807–0297.

As of January 22, 1999, the domain name seecandys.com was registered to Sees Candys and had the contact listed as Robby Kumar. The address was given as Tustin, California 92782; the e-mail address as dns@fluctuate.com; and the telephone number as (310) 860–0229.

On February 25, 1999, both the seescandy.com and seescandys.com domains were changed from the web host of websp.com to simplenet.net. Simplenet.net is a San Diego, California company.

Plaintiff has sued defendants for (1) infringement of federally registered service and trademarks, in particular "SEE'S," "SEE'S CANDIES," and "FAMOUS OLD TIME"; (2) federal unfair competition; (3) federal trademark dilution; (4) California State dilution under California Business and Professions Code § 14330; (5) unfair and deceptive trade practices under California Business and Professions Code § 17200; (6) California common law trade name, trademark, and service mark infringement and unfair competition; and (7) unjust enrichment.

Plaintiff seeks as relief a temporary, preliminary, and thereafter permanent injunction enjoining defendants from using any of See's marks, for goods or services or as metatags, directory names, other computer addresses, metatags, invisible data, or otherwise engaging in acts or conduct that would cause confusion to the source, sponsorship or affiliation of See's Candies with defendants.

Plaintiff also asks the Court to cancel defendant's registration of the two domains and require NSI to make those domains available for registration by plaintiff. Plaintiff also seeks delivery by defendants to plaintiff for destruction all materials bearing plaintiff's marks. Finally plaintiffs seek an accounting of profits, trebling of damages, punitive damages, costs, and attorney's fees.

B. *Legal Standard*

1. Temporary Restraining Order

Under Federal Rule of Civil Procedure 65(b)

A temporary restraining order may be granted without written or oral notice to the adverse party or to that party's attorney if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate an irreparable

injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

A party seeking injunctive relief must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, *or* (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *See Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.,* 856 F.2d 1445, 1448 (9th Cir. 1988); *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987). "These are not two distinct tests, but rather the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" *Miss World,* 856 F.2d at 1448 (quoting *Rodeo Collection,* 812 F.2d at 1217). However, in any situation, the Court must find that there is some threat of an immediate irreparable injury, even if that injury is not of great magnitude. *See Big Country,* 868 F.2d at 1088 (citing cases); *Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.,* 762 F.2d 1374, 1376 (9th Cir.1985) (citing cases).

## II. DISCUSSION

■ The Court will not grant a temporary restraining order against defendants at this time because such a ruling would be futile. Plaintiff has not been able to collect the information necessary to serve the complaint on defendants. As a result any temporary restraining order issued could only be in effect for a limited time and would be unlikely to have any effect on defendant whom plaintiff has not yet located. Once the order expired plaintiff would be unable to obtain a preliminary injunction because such relief cannot be imposed *ex parte.*

Service of process can pose a special dilemma for plaintiffs in cases like this in which the tortious activity occurred entirely on-line. The dilemma arises because the defendant may have used a fictitious name and address in the commission of the tortious acts. Traditionally, the default requirement in federal court is that the plaintiff must be able to identify the defendant sufficiently that a summons can be served on the defendant. *See* Fed.R.Civ.P. 4. This requires that the plaintiff be able to ascertain the defendant's name and address.

■ As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant. *See e.g., Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir.1980) (finding the district court abused its discretion in dismissing the case with respect to the John Doe defendants without requiring the named defendants to answer interrogatories seeking the names and addresses of the supervisors in charge of the relevant facilities during the relevant time period); *Estate of Rosenberg by Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir.1995) (permitting a suit naming fictitious parties as defendants to go forward because the allegations in the complaint were "specific enough to permit the identity of the party to be ascertained after reasonable discovery"); *Maclin v. Paulson,* 627 F.2d 83, 87 (7th Cir.1980) (approving of fictitious name pleadings until such time as the identity of the plaintiffs "can be learned through discovery or through the aid of the trial court"). In the even rarer case, a district court has sua sponte issued an order directing revelation of facts necessary to determine the true name of a John Doe defendant. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 390 n. 2, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (noting that the trial court had ordered the United States attorney to identify "those federal agents who it is indicated by the records of the United States Attorney participated in the . . . arrest of the [petitioner]") (quoting the district court's order).

■ In the Ninth Circuit such exceptions to the general rule have been generally disfavored. *See Gillespie,* 629 F.2d at 642.

However, a district court does have jurisdiction to determine the facts relevant to whether or not it has in personam jurisdiction in a given case. *See Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir.1977). A district court's decision to grant discovery to determine jurisdictional facts is a matter of discretion. *See id.*

With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information. Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from Internet Service Provider (ISP) to ISP,[1] with little or no hope of actually discovering the identity of the tortfeasor.

In such cases the traditional reluctance for permitting filings against John Doe defendants or fictitious names and the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with an forum in which they may seek redress for grievances. However, this need must be balanced against the legitimate and valuable right to participate in online forums anonymously or pseudonymously. People are permitted to interact pseudonymously and anonymously with each other so long as those acts are not in violation of the law. This ability to speak one's mind without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate. Furthermore, it permits persons to obtain information relevant to a sensitive or intimate condition without fear of embarrassment. People who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity.

■ Thus some limiting principals should apply to the determination of whether discovery to uncover the identity of a defendant is warranted. The following safeguards will ensure that this unusual procedure will only be employed in cases where the plaintiff has in good faith exhausted traditional avenues for identifying a civil defendant pre-service, and will prevent use of this method to harass or intimidate.

First, the plaintiff should identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court. *See e.g., Wells Fargo*, 556 F.2d at 430 n. 24 (stating that plaintiffs bear the burden of establishing jurisdictional facts). This requirement is necessary to ensure that federal requirements of jurisdiction and justiciability can be satisfied. *See Plant v. Does*, 19 F.Supp.2d 1316 (S.D.Fla.1998) (refusing to issue a temporary restraining order against unnamed and unserved bootleggers who had not yet committed an offense on the theory that plaintiffs have failed to establish that the Court had jurisdiction over defendants, to provide defendants with due process, and to demonstrate that an actual controversy existed).

---

1. ISPs provide two basic services to their clients: access and presence. Access services consist of an account through which the client can access the Internet and send e-mail. A presence account generally includes hard drive space that permits the client to have a web page or file transfer site. Persons who wish to run a site at their own domain, rather than at the domain of their service provider, can either make the significant investment in computer hardware, networking hardware, and high-speed access necessary to make their domains available on the Internet or can rent space and services from a service provider. This latter alternative, which is analogous to renting from a landlord who makes available offices in an office complex, is called domain hosting.

Suing the ISP in these case is most often not productive, either because the ISP lacks the knowledge requisite to be held liable for contributory infringement, or is immune pursuant to section 230(c) of the Communications Decency Act. *See e.g., Zeran v. America Online, Inc.*, 129 F.3d 327 (1997) (finding that failure to remove defamatory statements was an act shielded from liability by section 230(c)); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F.Supp. 949 (1997) (finding that the defendant did not have the knowledge necessary to be held liable for contributory trademark infringement); *Religious Technology Center v. Netcom On–Line Communication*, 907 F.Supp. 1361 (1995) (finding knowledge is required to hold an ISP liable for contributory infringement of a copyright).

■ Plaintiff's papers establish that the listed defendants who remain in the case after March 4, 1999 appear to be aliases for a person known as Ravi or Robby Kumar of Artesia, California ("the Kumar defendants"). Most of the addresses listed by aliases associated with the Kumar defendants show a California domicile, which indicates that the Court likely has jurisdiction over defendants. Plaintiffs are suing the following aliases, all of which are alleged to be owners or operators of the domain names seescandy.com and seescandys.com: Seescandy.com, Sees Candys, hostmaster dns, fluctuate, foolio, x2, ticker talk, RL, and Salu Kalu. Salu Kalu was listed as the contact for seescandy.com in September of 1998. RL is a person who was listed as the contact person for seescandy.com as of January 16, 1999. Hostmaster DNS is the name of the contact person listed for seescandy.com as of February 8, 1999. It is important to note that Hostmaster DNS is a common generic term used to describe the system operator in charge of running a domain name server. It is thus highly problematic as an identifier of a defendant. However, Hostmaster's e-mail address is dns@foolio.com, which ties this alias to the Kumar defendants. Fluctuate is the second level domain of fluctuate.com, which is listed in the WHOIS as registered to tickertalk, for whom the contact is Robby Kumar. Fluctuate.com is the domain that provides all the mailboxes for the e-mail addresses listed as contacts for the seescandy.com and seescandys.com domains. X2 is the listed registrant of the domain name x2.org, for whom the contact is listed as Ticker Talk with the E-mail address of dns@foolio.com. Foolio is the listed registrant for foolio.com, for whom the contact is Salu Kalu, and which is the domain hosting the E-mail address of the contact, Ticker Talk, for the x2.org domain. Most convincing of all, See's has been in contact by e-mail with a person who goes by the name "Ravi." In his e-mail message, Ravi has indicated a desire to sell the subject domain names to See's and has provided See's with evidence that consumers have been actually confused by these web sites, for which Ravi claims to hold registration rights. The Court finds that there appears to be only one person behind all these registrations, a Ravi or Robby Kumar, who may also be known as Salu Kalu. The Court finds that plaintiff has made a satisfactory showing that there is an actual person behind these acts who would be amenable to suit in federal court.

■ Second, the party should identify all previous steps taken to locate the elusive defendant. This element is aimed at ensuring that plaintiffs make a good faith effort to comply with the requirements of service of process and specifically identifying defendants. *See Plant*, 19 F.Supp.2d at 1320 (noting that plaintiffs had failed to explain why they were unable to identify the defendants). Plaintiff's counsel has certified that the following efforts were made to contact defendants: (1) calls were made to the two non-directory information services telephone numbers. One was a non-working number and nobody answered the other one. Simultaneous with the filing of the motion for a temporary restraining order and preliminary injunction plaintiff served its complaint, brief, and all accompanying papers to the official addresses provided to NSI, only one of which was a complete mailing address. Plaintiff also served these documents, sans exhibits, by electronic mail to the e-mail addresses associated with the domains registered by Ravi Kumar, Robby Kumar, RL, Salu Kalu, and Hostmaster DNS. Although such service is not sufficient to comply with the Federal Rules of Civil Procedure, the Court finds that such acts do show that plaintiff has made a good faith effort to specifically identify defendant and to serve notice on defendant.

Third, plaintiff should establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss. *See Gillespie*, 629 F.2d at 642. A conclusory pleading will never be sufficient to satisfy this element. Pre-service discovery is akin to the process used during criminal investigations to obtain warrants. The requirement that the government show probable cause is, in part, a protection against the misuse of *ex parte* procedures to invade the privacy of one who has done no wrong. A similar requirement is necessary here to prevent abuse of this extraordinary application of the discovery process and to ensure that

plaintiff has standing to pursue an action against defendant. *See e.g., Plant,* 19 F.Supp.2d at 1321 n. 2 (commenting that standing was likely absent because defendants were alleging only future acts of infringement, not past acts or patterns of infringement). Thus, plaintiff must make some showing that an act giving rise to civil liability actually occurred and that the discovery is aimed at revealing specific identifying features of the person or entity who committed that act.

 Plaintiff has demonstrated that their trademark infringement claim could survive a motion to dismiss and therefore have satisfied this element. The test for infringement of a federally registered trademark (Count I) and for false designation of origin (Count II) under the Lanham Act is whether the alleged infringing act creates a likelihood of confusion. In determining whether or not there is a likelihood of confusion, the Court should consider the following factors: (1) the strength of the mark, (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *See AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979).

Defendants marks, See's Candy and See's Candies, are descriptive. However, it appears that these marks have developed substantial secondary meaning such that the mark has become a strong mark. Both defendants and plaintiff are using the same marketing channel, the World Wide Web, to offer the same apparent service, See's Candy's products. The marks employed by defendants on the web page itself are identical to plaintiff's, not only textually, but in complete figuration, copying the stylized text and pictorial representations of the registered See's marks.

Although plaintiff contends that candy is by definition the type of product on which customers spend little time and care, the Court finds that the premium candy product at issue here is of a type that would result in an enhanced level of care. Where a product is a premium product in its class, purchasers at the premium level are more likely to exercise additional care to ensure that they get the premium product they desire.

However, and most importantly, plaintiff can show actual confusion, courtesy of the 31 e-mails provided by defendant. "[E]vidence of actual confusion is strong proof of the fact of likelihood of confusion." 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 23:13 at 23–35. Defendant Ravi has informed plaintiff by e-mail that people have requested catalogs and have tried to order candy from the web sites located at seescandy.com and seescandys.com.

Defendants desire to sell the two domains back to See's Candy combined with the use of See's trademark logos, complete down to style and figuration, is a sign that defendants intended to trade on the goodwill associated with the See's marks. The Court also can infer intentional copying and bad faith simply from the similarity of the marks. *See The Earth Technology Corp. v. Environmental Research & Tech., Inc.,* 222 U.S.P.Q. 585, 588–89, 1984 WL 877 (C.D.Cal.1983). Plaintiffs showing is sufficient to demonstrate that the Kumar defendants have committed an unlawful act for which a federal cause of action can subsist.

Lastly, the plaintiff should file a request for discovery with the Court, along with a statement of reasons justifying the specific discovery requested as well as identification of a limited number of persons or entities on whom discovery process might be served and for which there is a reasonable likelihood that the discovery process will lead to identifying information about defendant that would make service of process possible. *See Gillespie,* 629 F.2d at 642 (stating that discovery should not be permitted if it is not likely to uncover the identity of the defendant). As ordered below, plaintiff has 14 days to make a filing with the Court with respect to the process the Court should consider ordering.

## II. CONCLUSION AND ORDER

Plaintiff shall have 14 days from the date of this order to submit a brief with the Court

setting forth specifically the forms of discovery process, the justification for such process, and the persons or entities on whom they are to be served that plaintiff expects will achieve the end of providing the missing identifying information necessary for service of process. If plaintiff does not yet have sufficient information to satisfy the Court that such process should be ordered, plaintiff may so indicate and later reapply for such discovery once the facts necessary to make the required showing have been uncovered.

IT IS SO ORDERED.