TEXAS PACIFIC–MISSOURI PACIFIC TERMINAL RAILROAD OF NEW ORLEANS, Plaintiff,

v.

BROTHERHOOD OF RAILWAY & STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, T. G. Brown, General Chairman, J. H. Lucas, Assistant General Chairman, R. E. Stanley, Local Chairman, and C. L. Dennis, President, Defendants.

Civ. A. No. 14727.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 30, 1964.

Phelps, Dunbar, Marks, Claverie & Sims, Peter G. Burke, New Orleans, La., for plaintiff.

Dodd, Hirsch, Barker & Meunier, C. Paul Barker, Thomas J. Meunier, New Orleans, La., for defendants.

AINSWORTH, District Judge.

Two questions are presented for decision: first, is the dispute between plaintiff carrier and defendant labor union representing the railway clerks, a major or minor one? If it is a major dispute, the railway clerks may strike plaintiff's property (as they proposed to do when temporarily restrained by us) after resort is had to mediation as required by the Railway Labor Act, 45 U.S.C.A. § 151 et seq. If it is a minor dispute, the parties are relegated to specified grievance procedures after which compulsory arbitration is required, at the option of either party, by submission to the National Railroad Adjustment Board whose award shall be final and binding on the parties.

The second question is a corollary of the first: if the dispute is a minor one, does the Norris-LaGuardia Act, 29 U.S.C.A. § 104, which restricts the issuance of injunctions by federal courts in certain labor disputes, forbid our granting an injunction where, as here, it appears that the dispute has not yet been submitted to the National Railroad Adjustment Board? We may not issue an injunction to restrain defendants from striking plaintiff's property if the dispute is a major one.

We hold that the dispute here is a minor one because it grows out of an interpretation of the collective bargaining agreement between the parties dated November 5, 1963 (Ex. D 1) relating to plaintiff's operation in the New Orleans freight handling facility. The agreement states in paragraph 2:

"Texas Pacific Motor Transport and Missouri Pacific Truck Line road-haul trucks, both inbound and outbound, will be unloaded and loaded by Carrier employes on the track side of the freight house or platform, but if necessary for such road-haul trucks to be loaded or unloaded on the street side, such loading and unloading will be performed by Carrier employes and the 16-foot zone will not apply."

The capital stock of plaintiff is owned one half by the Texas & Pacific Railway Company and one half by the Missouri Pacific Railroad Company. Missouri Pacific Railroad Company owns approximately 82 per cent of the capital stock of Texas & Pacific Railway Company. Texas & Pacific Railway Company owns all of the capital stock of Texas & Pacific Motor Transport Company; all of these companies are common carriers.

On February 10, 1964, Supplement No. 150 to Southwestern Lines Freight Tariff was issued effective March 17, 1964, and provided for rates on freight loaded in or on trailers and transported on

flatcars between a number of states, including Louisiana and Texas.

On April 20, 1964, the T. & P. Motor Transport Company entered into a drayage contract with the General Services Administration of the United States Government for the handling of trailer-load shipments of freight originating in Fort Worth for delivery to various federal agencies in the New Orleans area. Under this contract the motor transport company delivers trailers to GSA in Fort Worth for loading, picks up the loaded trailers and delivers them to T. & P. Railway Company at its ramp in Fort Worth. A rail bill of lading is issued by the railroad for transportation ramp to ramp. This is the so-called piggyback operation. At the destination ramp in New Orleans the trailer is removed by the motor transport company and handled by it under the terms of the latter agreement.

Plaintiff has leased to T. & P. Motor Transport Company a space 60 feet by 70 feet in its New Orleans freight handling facility in the warehouse on Annunciation Street for its operation under the latter agreement. It now develops that this meant that the breaking out as well as the delivering of LTL ex-pool trailer freight within the New Orleans commercial zone would be done by T. & P. Motor Transport Company employees rather than by the Brotherhood of Railway Clerks who had heretofore handled and broken out all freight in the New Orleans freight handling facility. The Brotherhood of Railway Clerks are members of a different union than the employees of the motor transport company.

Plaintiff construes its agreement with defendant labor organization to permit the operation by T. & P. Motor Transport Company in the manner described and contends that there is no prohibition against such handling in the agreement; that the operation is a Texas & Pacific Motor Transport operation, not plaintiff's, and therefore that there is no violation of its agreement with the railway clerks to allow the breaking out of these shipments to occur in the New Orleans freight handling facility with the services of transport company employees rather than defendants' employees. On the other hand, the union asserts that what plaintiff is attempting here is a change in the basic agreement between the parties by imposing new conditions; that this can only be done by serving the Section 6 notice required by the Railway Labor Act and resorting to the procedures set forth for the handling of major disputes.

T. & P. Motor Transport operations began on or about April 20, 1964 after execution of the drayage contract and shipments which required breaking out of LTL ex-pool trailer freight were handled by defendant railway clerks. On July 2, 1964, plaintiff's freight agent informed defendants' New Orleans chairman that the railway clerks would no longer perform the work of breaking out T. & P. Transport-GSA shipments received in the New Orleans freight handling facility but that in the future the work would be done by employees of the transport company, members of another union. Without further notice to plaintiff the union issued a strike ballot to is members for return on July 8, 1964, and informed plaintiff on July 9 that a strike would occur at 6:00 a. m. on July 10, 1964. It was then that this suit was filed and we issued our temporary restraining order which is still in effect restraining defendants from striking.

To resolve the first principal issue in this case, that is, whether this is a major or minor dispute, we resort to the guidelines heretofore established in several important decisions. In Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945), the Supreme Court described major and minor controversies as follows:

"The first relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the

controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

"The second class, however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective agreement, e. g., claims on account of personal injuries. In either case the claim is to rights accrued, not merely to have new ones created for the future."

See also Rutland Railway Corp. v. Brotherhood of Locomotive Eng., 2 Cir., 1962, 307 F.2d 21.

In Hilbert v. Pennsylvania Railroad Company, 1961, 290 F.2d 881, 884, the Seventh Circuit said:

"The Act marks out two distinct routes for settlement of the two classes of disputes. As to both, the Act requires the parties enter into negotiations as the first step towards settlement of the controversy (§ 2, Second, 45 U.S.C.A. § 152, Second). Beyond this initial stage the procedures diverge. Major disputes go first to mediation (§ 5, First, 45 U.S.C.A. § 155, First) ; if that fails, to acceptance or rejection of arbitration (§ 5, First, 45 U.S.C.A. § 155, First) ; and finally to possible presidential intervention (§ 10, 45 U.S.C.A. § 160). If all this fails, compulsory processes are at an end, and either party may resort to self help. No authority is empowered to decide the dispute unless the parties agree to arbitration.

"In minor disputes, if negotiation fails, either party may submit the controversy to the National Railroad Adjustment Board (§ 3, First (i), 45 U.S.C.A. § 153, First (i)). The awards of the Board are final and binding on the parties (§ 3, First (m), 45 U.S.C.A. § 153, First (m)). This is a form of compulsory arbitration."

We construe the difference of opinion in the dispute between the parties to be over the interpretation of the collective bargaining agreement of November 5, 1963, either of the express terms thereof or to an omission in the contract. The union seeks to protect what it assumes to be "acquired rights" under the contract; that is, that it has the right to handle all freight shipments in the New Orleans freight handling facility, including those of the Texas & Pacific Motor Transport Company road-haul trucks, both inbound and outbound, and the piggyback operations. Plaintiff construes the agreement to mean that this would not include Texas & Pacific Motor Transport road-haul trucks which are transported on a rail flatcar and on a rail bill of lading from Fort Worth ramp to New Orleans ramp, where the motor transport company has made a special contract with GSA for picking up, breaking out and delivering shipments in the New Orleans commercial zone; in effect, that this is a T. & P. Motor Transport operation not under plaintiff's control and the transport company should have the right to have its own employees break out LTL shipments in space leased from plaintiff. It should be observed, however, that plaintiff terminal company, T. & P. Motor Transport Company and T. & P. Railway Company are all part of the Texas & Pacific-Missouri Pacific Railroad System. These companies though separately incorporated are virtually indistinguishable. See Butte, Anaconda & P. Ry. Co. v. Brotherhood of L. F. & E., 9 Cir., 1959, 268 F.2d 54.

■ We are aware of the fact that it is not our function to construe the contractual provisions upon which the parties rely for their respective positions, and we make no determination of the

merits of the dispute since we take heed of the admonition of the Supreme Court in Brotherhood of L. E. v. Missouri-Kansas-T. R. Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1435 (1960), that we scrupulously avoid encroaching upon the jurisdiction of the National Railroad Adjustment Board which has exclusive jurisdiction to make a final and binding award in minor disputes arising between the carrier and the union.

■ We are therefore of the firm opinion that this is a minor dispute since it involves interpretation or application of the agreement, a matter within the purview of Section 3(i)–(m) of the Railway Labor Act, 45 U.S.C.A. § 153(i) –(m), Chicago, M., St. P. & P. R. Co. v. Order of Ry. Con. & Brake., 7 Cir., 1961, 296 F.2d 453.

■ We do not agree with the defendants' contention which raises the second important principle in this case, that the Norris-LaGuardia Act prevents us from issuing an injunction in a minor dispute where the issue has not yet been presented to the National Railroad Adjustment Board. The Supreme Court held in Brotherhood of Rail. Tr. v. Chicago R. & I. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957), that the specific provisions of the Railway Labor Act take precedence over the more general provisions of the Norris-LaGuardia Act. It was squarely held by the Fifth Circuit in Louisville & Nashville Railroad Company v. Brown, 1958, 252 F.2d 149, cert. denied 356 U.S. 949, 78 S.Ct. 913, 2 L.Ed.2d 843, that it was immaterial whether the dispute was pending before the Adjustment Board at the time the strike was called and not necessary that it be pending before the Board in order that relief might be granted under the Railway Labor Act. To hold otherwise would be to frustrate the plain provisions of the Railway Labor Act which require submission of minor grievances in the usual manner and finally compulsory arbitration if negotiation is unsuccessful. To the same effect see the Seventh Circuit decision in Chicago, M., St. P. & P. R. Co. v. Order of Ry. Con. & Brake., 1961, 296 F.2d 453, that the district court was not precluded by the Norris-LaGuardia Act and had jurisdiction to grant injunctive relief against a threatened strike over a minor dispute.

■■ The only question remaining for decision is whether we should require restoration of the status quo as a condition to the granting of an injunction in plaintiff's favor. Plaintiff contends that the railway clerks do not have "regular" positions as are generally understood in the railroad business, and further that if the matter is ultimately presented to the Adjustment Board and resolved in favor of the union, the union's employees are protected because plaintiff will be required to reimburse union employees for back pay which they would have earned had they not lost the work because of the unilateral change in working conditions. The difficulty of asserting employee claims is apparent. It will also require a delay and expense to the union employees for the ultimate presentation and determination of the case by the Board should the union win its point in the original dispute. We agree that it would be difficult, and almost impossible, to prove up the cases of individual workers to the Board, for the handling of the freight by transport company employees rather than railway clerks would not necessarily result in a reduction of the work force though it would undoubtedly result in a reduction of the work available to the clerks. A number of clerks were furloughed on or about January 30, 1964, when plaintiff changed its mode of operations at the New Orleans terminal. Some of these clerks might have had the opportunity of obtaining some work if plaintiff had not changed its method of operation in the handling of GSA piggyback freight. We have the power under Brotherhood of L. E. v. Missouri-Kansas-T. R. Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1435 (1960), to exercise traditional, equitable considerations and, as a court of equity, the power to impose conditions requiring maintenance of the

status quo. As the Supreme Court said in the cited case, conditions of this nature traditionally may be made the price of relief in order to do justice between the parties; the award of an interlocutory injunction has never been regarded as strictly a matter of right and the court will avoid injury so far as may be by attaching conditions to the award, it being our duty to do so upon conditions that will protect all whose interests the injunction may affect. Since the Railway Labor Act contains no express provisions circumscribing the equitable powers of the court, we are authorized to impose conditions.

■ It is our belief, under the precise situation and facts before us in this case, particularly after an examination of the nature of the dispute and considering the hardship which may occur to defendant clerks, that we require plaintiff as a condition of the issuance of the injunction that the status quo be restored; that is, that the railway clerks return to handling the freight in the same manner as they did prior to July 2, 1964, including breaking out of Texas & Pacific Motor Transport trailers piggyback or otherwise in the New Orleans freight handling facility. Plaintiff has made the alternative request that if the preliminary injunction is granted and is conditioned upon restoration of the status quo, the status quo be further conditioned upon compliance with a directive by us that the parties create a special board of adjustment under the Railway Labor Act to hear and render a decision on the dispute. Defendants have responded to this request by agreeing to enter into an agreement within thirty days to establish such a board with the understanding that the award of the board will be final and binding on all parties and that the parties waive their right to withdraw from the board or withdraw the dispute once the agreement is reached. We take cognizance of the agreement of defendants and commend the parties for reaching this understanding. Our restoration of the status quo is therefore made with full cognizance of the agreement and understanding that the board will be promptly set up and the dispute handled with dispatch.

A preliminary injunction will be issued on the terms above set forth.