409 F.2d 312
 70 L.R.R.M. (BNA) 3295
 LOCAL LODGE 2144, BROTHERHOOD OF RAILWAY, AIRLINE AND
STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND
STATION EMPLOYEES and James H. Thill,
Plaintiffs-Appellees,
v.
RAILWAY EXPRESS AGENCY, INCORPORATED, a/k/a R E A Express,
Defendant-Appellant.
 No. 529, Docket 33351.
 United States Court of Appeals Second Circuit.
 Argued March 14, 1969.
Decided March 31, 1969.
 
 Robert E. Johnson, New York City (Hugh McM. Russ, H. Kenneth Schroeder, Jr., Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N.Y., on the biref), for defendant-appellant.
 John T. Collins, Buffalo, N.Y., for plaintiffs-appellees.
 Before MOORE and FEINBERG, Circuit Judges, and McLEAN, District judge.*
 FEINBERG, Circuit Judge:
 
 
 1
 Defendant Railway Express Agency, Incorporated, appeals from a preliminary injunction of the United States District Court for the Western District of New York, John T. Curtin, J., restraining it for a period of 60 days from moving certain operations from Buffalo to Albany. The injunction was stayed by this court pending hearing and determination of this appeal. For reasons given below, we affirm the district court.
 
 I.
 
 2
 Railway Express is a carrier of freight, baggage and merchandise, which has been conducting its line haul intercity transportation to and from 24 so-called hub cities, including Buffalo and Albany, New York. A hub city is a central transfer point in a region through which freight is routed to its final destination. This litigation grows out of a management determination that it was economically wasteful to have both Buffalo and Albany as hub cities. By January 1969, and perhaps earlier, Railway Express had decided to eliminate Buffalo as a hub city and to reroute hub traffic from that city to Albany. Plaintiff Local Lodge 2144, Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, represents various employees of Railway Express in Buffalo, including plaintiff Thill. As soon as Lodge 2144 was informed of the contemplated move, it objected to it. Lodge 2144 claimed that the proposed change in operations was covered by the collective bargaining agreement between the parties, which, among other things, called for discussions for 60 days prior to making the move and certain protections for the Buffalo employees. Railway Express took the position that the contract was inapplicable.
 
 
 3
 Events moved rapidly after that: On February 11, 1969, Lodge 2144 began an action in the United States District Court in Buffalo to enjoin the transfer and on the same date obtained a temporary restraining order. That order expired by its terms on February 13, and the district court refused to extend it. On February 14, 18, and 19, the court conducted a hearing. Meanwhile, by February 17, Railway Express had transferred its Buffalo hub operations to Albany. Undoubtedly working under great pressure, Judge Curtin filed 25, which detailed opinion on February 25, which granted plaintiff Lodge 2144 a preliminary injunction, restoring the status quo for 60 days. However, the judge postponed the effective date of the injunction until March 7, 1969, to give Railway Express time to transfer the hub operations from Albany back to Buffalo. On March 6, this court stayed the effective date of Judge Curtin's order and expedited the appeal so that it was heard eight days later. In the meantime, the change in operations has remained in effect.
 
 
 4
 What is at stake in the litigation are jobs and economic benefits for the Buffalo employees represented by Lodge 2144. Basic to an understanding of the dispute is Rule 12 of the collective bargaining agreement, which is set out in full in the margin.[1] That Rule deals with consolidations of departments and transfers of work or positions from 'one seniority district to another.' If the Rule applies, Railway Express has to give notice to the union of a 'contemplated change' in operations, and confer with it for 60 days regarding the change. If no agreement is reached, either party may refer the matter for binding arbitration under the Railway Labor Act, 45 U.S.C. 153, 157, on various issues growing out of the change. Under the Rule, employees in the district from which the work is transferred are given certain rights to 'follow their positions or work' and, if a change in residence is required, the employees are entitled to transportation for themselves and their families, a $500 transportation allowance and protection against loss in the sale of homes or cancellation of leases. Although the Rule is an obvious attempt to minimize the unsettling effect on employees of a management decision to transfer or consolidate work, there is no doubt that Railway Express has the ultimate right to move the locus of the work. Lodge 2144 at most questions only the manner of making the change, its timing and its contractual consequences. Thus, Rule 12 provides that any arbitration 'shall not include any question as to the right of the Company to make the change but shall be confined to the manner of implementing the contemplated change.'
 
 
 5
 With this background, we turn to the legal issues that were before Judge Curtin. We do not have here the problem-- itself often major-- of characterizing this railway labor dispute as 'major' or 'minor.' Although Railway Express had taken the position with the Lodge that Rule 12 was inapplicable because the change in operations was merely a rerouting of traffic rather than a transfer or consolidation, both sides agreed in the district court that they were involved in a 'minor dispute,' i.e., one concerning the application or interpretation of a provision of the collective bargaining agreement. See, e.g., Elgin, Joliet & Eastern Ry. v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945); Rutland Ry. v. Brotherhood of Locomotive Engineers, 307 F.2d 21, 31-36 (2d Cir. 1962), cert. denied, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963). Neither party argues that the district court should have decided whether Rule 12 actually applies; both acknowledge that that question is for the National Railroad Adjustment Board. Pending a decision by the Board, however, Local 2144 claimed that the court should grant a preliminary injunction to maintain the status quo. Judge Curtin held that he had the power to grant that relief, and did so, after considering the competing equities.
 
 
 6
 Before us, appellant Railway Express argues that the injunction was improper, claiming that the balance of the equities was against the Lodge and for Railway Express, the district court invaded the primary jurisdiction of the Adjustment Board by granting the injunction, and the court should have dismissed the complaint for failure to state a claim and lack of subject matter jurisdiction. We shall deal with these arguments in turn.
 
 II.
 
 7
 It should first be noted that Railway Express apparently agrees that in a proper case involving a minor dispute, a district court has the power to
 
 
 8
 enjoin a carrier from effectuating the changes which gave rise to and constitute the subject matter of the dispute, independently of any suit by the railroad for equitable relief.
 
 
 9
 The issue of power was thus phrased by the Supreme Court in Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R.R., 363 U.S. 528, 531 n. 3, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960). Thereafter, this court squarely held that a federal court can issue such an injunction
 
 
 10
 to restore the status quo in a minor dispute if the court's discretion is soundly exercised to preserve the primary jurisdiction of the Adjustment Board.
 
 
 11
 Westchester Lodge 2186, Brotherhood of Railway Clerks v. Railway Express Agency, Inc., 329 F.2d 748, 753 (2d Cir. 1964); see Railway Express Agency, Inc. v. Long Island City Lodge 2147, Brotherhood of Railway Clerks, 53 CCH Lab.Cas. 17,124 (S.D.N.Y.1966). We thus turn to the manner in which Judge Curtin exercised his undoubted discretion.
 
 
 12
 Appellant argues that the district court, in weighing the equities, departed substantially 'from the normal standards of irreparable injury.' It is difficult to see in what respect this is so. Appellant emphasizes to us, as it did to Judge Curtin, its very heavy operating losses in the last few years. It also points out that the move of hub traffic from Buffalo the Albany will cut its costs considerably and increase its efficiency. But Judge Curtin was sharply aware of these considerations and referred to them in his opinion. The judge, however, was also concerned about the impact of the change upon those employees in Buffalo who would have the right to transfer to Albany if Rule 12 applied. Appellant argues that none of these employees would suffer irreparable injury because they would receive unemployment benefits, could get jobs elsewhere, and, in any event, would be entitled to a back pay order if the contention that Rule 12 does not apply is found by the Adjustment Board to be incorrect.
 
 
 13
 Judge Curtin dealt with these arguments. Thus, he pointed out:
 
 
 14
 Testimony was received concerning individual hardship to particular employees. For example, Frank Laconti, 38 years of age, is Roster #258 with seniority to October 20, 1952, and the president of the Local Chapter of the Brotherhood. Before the transfer, he made $133 a week gross. He has two children, owns his own home, pays $135 a month on the mortgage, and has no seniority in any other district. He has worked as a driver on the city delivery for a number of years. He has a high school education and, if not permitted to follow the work to Albany, would not at the present time have any other prospect of employment.
 
 
 15
 The opinion contained a footnote to these findings, taking specific notice of appellant's argument:
 
 
 16
 Mr. Laconti, like those other employees whose prospect of continued work with the defendant is dim, would be entitled to certain unemployment benefits. Under the Railroad Unemployment Insurance Act, employees entitled to benefits are paid $63.50 a week, which is non-taxable. Under Rule 13 of the contract, Supplemental Unemployment Benefits are paid by the defendant to employees with over two years of service. An employee with less than 10 years of service receives an additional $11.50 a week. Those with over 10 years' service receive $26.50 a week. These additional amounts are taxable, and are only paid for a limited time.
 
 Judge Curtin also held:
 
 17
 All agree that some decisions of the Board are long-delayed. If the Board should eventually find that some of the employees are entitled to transfer, that decision made some time from now would be of little practical help. A number of Buffalo employees would go to Albany if they had the opportunity. But by the time a Board decision is rendered, many of the employees would be engaged in other employment and the right to go to Albany would be an empty one.
 
 
 18
 These and similar findings made clear the judge's view that the threat of irreparable injury was real. Cf. Texas Pacific-Missouri Pacific Terminal R.R. v. Brotherhood of Railway Clerks, 232 F.Supp. 33, 37-38 (E.D.La.1964). We cannot displace these findings unless we regard them as clearly erroneous, which we do not.
 
 
 19
 Appellant also points out that because its eventual right to move the operation is clear under Rule 12, the change will eliminate many Buffalo employees in any event. Therefore, according to appellant, the 60-day injunction will force it to pay wages to many more employees than a back pay order of the Adjustment Board would cover. However, it is not clear what the toal impact of the move is on the reduction of personnel. While there will be a substantial diminution of Buffalo employees, there was evidence at the hearing that many additional employees will be needed at Albany. Accordingly, the immediate saving in payroll, even if Buffalo employees are dropped, may be far less than the total pay of the latter group. Conversely, the 60-day shift back to Buffalo will add employees, but Railway Express can, if it so chooses, reduce the number employed in Albany. It is true that this sort of rearrangement of operations is inconvenient, but it was appellant, not Lodge 2144, that took the bit in its teeth and made the move despite the legal risk. Moreover, appellant did so even though it was not faced with the alternative of lengthy and therefore unduly costly negotiation. Appellant's obligation under Rule 12 was to discuss for no more than 60 days. Almost a month went by after appellant first notified the Lodge of the proposed change in operations, and it had been contemplated for at least a month or two before that. Yet Railway Express refused to discuss the move with Lodge 2144 at all, although doing so would have used up all-- or most-- of the 60-day period contemplated by Rule 12. Of course, if appellant's construction of the Rule turns out to be correct, it was under no obligation to discuss, but it could have done so without waiving its legal position. In balancing the equities, it is surely not irrelevant that appellant took its chances, although the alternative would have caused little, or no, delay. Appellant now tells us that at most only 15 Buffalo employees want to exercise their alleged right to transfer to Albany, and that this proves the inequity of requiring it to employ many more employees in Buffalo for 60 days. If this is true, however, the argument also cuts the other way, for its shows how easily the problem could have been resolved had appellant sought to do so before the move.
 
 
 20
 Finally, appellant calls to our attention various opinions which have denied a union injunctive relif: Brotherhood of Locomotive Firemen and Enginemen v. New York, New Haven & Hartford R.R., 296 F.Supp. 1044 (D.Conn.1968); Railway Express Agency, Inc. v. Long Island City Lodge 2147, Brotherhood of Railway Clerks, supra; and Brotherhood of Railroad Trainmen v. Boston & Maine R.R., 244 F.Supp. 378 (D.Mass.1965). Tow of these decisions are clearly distinguishable; the first involved no loss of jobs at all, and in the last the court relied on the fact that there was no showing that the terminated employees desired reemployment. In any event, each of the three represents a decision by a district judge on the basis of the equities as he saw them. None requires or justifies reversal of Judge Curtin in the exercise of his discretion on the facts before him.
 
 
 21
 In sum, after thorough consideration of the record before Judge Curtin and the arguments to us, we find no error in his balancing of equities and exercise of discretion.
 
 III.
 
 22
 Appellant's remaining points require somewhat less discussion. It complains that the district judge chose a 60-day injunction period and indicated that the parties should use it to bargain. Since appellant was not required under Rule 12 to bargain for a longer period in any event, it claims that the judge, in effect, actually decided the merits of the Rule 12 dispute, and in the union's favor. However, the court did not decide whether Rule 12 applied, and it disclaimed any intention of doing so. A 60-day injunction period was not inappropriate. It is true that the judge indicated that the 60-day period might be helpful 'to resolve the differences between the parties,' but this was pure common sense, hardly a basis for reversal.
 
 
 23
 Railway Express also calims that the complaint failed to state a claim upon which relief can be granted because it sought, among other things, a direction that appellant comply with Rule 12. Appellant points out that the Adjustment Board is the only proper forum to determine whether Rule 12 applies. This is true, but whether Lodge 2144's complaint asked for too much relief is not controlling if the court had jurisdiction to enter the order it did. As to that, appellant argues that no dispute was pending before the Adjustment Board when the complaint was filed. However, on the day after commencement of the action, Lodge 2144 wrote appellant taht it intended to refer the dispute to the Special Labor Board-- National Railroad Adjustment Board-- 3d Division, and sent a copy of its letter to the Board, a circumstance alluded to in Judge Curtin's opinion. Since then Lodge 2144 has taken further steps to have the dispute heard. It is true that the purpose of the action here must be to preserve the jurisdiction of the Adjustment Board. Westchester Lodge 2186, Brotherhood of Railway Clerks v. Railway Express Agency, Inc.,supra, 329 F.2d at 753. But the party invoking the Board's jurisdiction should have a 'reasonable time' to do so. Id.; see Itasca Lodge 2029, Brotherhood of Railway Clerks v. Railway Express Agency, Inc., 391 F.2d 657, 665-669 (8th Cir. 1968). We are informed that: The Special Board has only recently been created to handle minor disputes of these parties; on March 6, the dispute was formally submitted by Lodge 2144; on March 11, Railway Express appointed a member; on March 12, Lodge 2144 did the same; and these two members must select a third. We hope that this will be done promptly and that as soon as possible thereafter the dispute will be heard and decided. Should there be undue delay, either party can of course petition the district court for appropriate relief.
 
 
 24
 Judgment affirmed. The stay of Judge Curtin's order will continue only until issuance of the mandate, at which time the injunction will go into effect for a 60-day period.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 RULE 12-- TRANSFERS AND CONSOLIDATIONS
 (a) This Agreement recognizes that two or more offices or departments may be consolidated and/or positions or work involving a position may be transferred from one seniority district to another after conference and agreement between the Management and the duly accredited representatives of the employes. In the event of failure to make an agreement within sixty (60) days after notice is given to the General Chairman or General Chairmen representing the employes to be affected by the contemplated change, the matter may be referred by either party to final and binding resolution in accordance with Sections 3 and/or 7 of the Railway Labor Act as amended. The issues submitted for such determination shall not include any question as to the right of the Company to make the change but shall be confined to the manner of implementing the contemplated change.
 (b) Employes may follow their positions or work when same is transferred from one seniority district to another. The incumbents will have prior right to the positions to be transferred, if they elect to accompany same. Those electing not to follow their positions and work may exercise their seniority rights and their positions will be bulletined first in the seniority district from which they are to be transferred, and if necessary, second in the seniority district to which they are to be transferred. Seniority of employes transferring under such circumstances shall be transferred to the district to which they are transferred.
 (c) Employes filing applications for positions bulletined on other districts of on other rosters will, if they possess sufficient fitness and ability, be given preference over status employes, non-employes and employes not having seniority rights under this Agreement. If two or more employes file applications for such positions they will be given preference in accordance with their seniority rights.
 (d) Employes voluntarily transferring without their positions from one seniority district to another will acquire seniority in the district to which transferring as of the date of transfer and will retain and continue to accumulate seniority in district from which transferring. In the event such employes are displaced on account of force reduction or the exercise of seniority rights they must exhaust their rights in the new seniority district before being permitted to displace junior employes in the district from which transferred.
 (e) When a consolidation or transfer as provided in paragraph (a) requires an employe to change his residence such employe shall receive time off to make the transfer, transportation for themselves, dependent members of their family and personal property. They shall also receive a Five Hundred Dollar ($500) transfer allowance and be protected against loss in the sale of their homes or cancellation of leases.
 (f) Employes exercising seniority rights to new positions or vacancies which necessitate a change of residence will receive free transportation (where procurable) for themselves, dependent members of their family, and household goods, but free transportation of household goods under this circumstance need not be allowed more than once in a twelve (12) month period.